UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STRYKER CORPORATION, et al,

       Plaintiffs,

                                 File No.  1:05-CV-051

v.

                                 HON. ROBERT HOLMES BELL

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, et al.,

       Defendants.

_____/

## **O P I N I O N**

    This matter is before the Court on Plaintiffs Stryker Corporation ("Stryker") and

Howmedica Osteonics Corporation's motions for summary judgment against Defendants XL

Insurance America Inc. ("XLIA")[1] and TIG Insurance Company ("TIG").  Both motions

involve Stryker's liability to Pfizer in relation to Duracon Uni-Knees ("DUKs").  Several

individuals who received DUKs filed lawsuits against Pfizer and Stryker.  Pfizer sued

Stryker in the Southern District of New York and that court found that Stryker is liable to

Pfizer for the DUK claims paid by Pfizer, though Stryker's counterclaims remain pending.

Plaintiffs seek summary judgment against XLIA as to the 2000 XLIA insurance policy

providing coverage for Plaintiffs' obligations to Pfizer, as those obligations are determined

by the lawsuit in the Southern District of New York.  Plaintiffs seek summary judgment

---

     [1]For simplicity the Court will use XLIA throughout the opinion, including references
to the company during the time period when it was known as Winterthur.

against TIG as to the 2000 TIG excess insurance policy providing coverage for any losses Plaintiffs incurred in excess of XLIA's 2000 policy. The Court held a hearing on these motions on June 13, 2008. For the reasons that follow, both of Plaintiffs' motions for summary judgment will be granted.

## I. Background

Plaintiffs' motions involve the 2000 XLIA Commercial Umbrella Policy ("2000 XLIA Policy") issued by XLIA to Stryker and the 2000 TIG Excess Umbrella Liability Policy ("2000 TIG Excess Policy") issued by TIG to Stryker. The instant lawsuit is related to two other cases. First, this matter involves *Stryker Corporation v. XL Insurance America Inc.*, File No. 4:01-CV-157 ("2001 Stryker Case"), which is still pending before the Court. Second, this matter involves *Pfizer v. Stryker*, File No. 1:02-CV-8613, currently pending in the Southern District of New York.

The plaintiffs in the 2001 Stryker Case are Stryker Corporation and Howmedica Osteonics Corp. The only defendant in the 2001 Stryker case is XLIA. The 2001 Stryker Case involves XLIA's policy for the year 2000. The Court divided the 2001 Stryker Case into two phases. Phase One, which has been completed, addressed liability and Phase Two, which is ongoing, will address damages. In Phase One of the 2001 Stryker Case, after extensive motions practice, the Court held a five-day bench trial from January 29, through February 2, 2007. The Court subsequently issued an opinion setting forth the Court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure

52(a).  (File No. 4:01-CV-157, Dkt. No. 916, 04/03/2007 Op.)  The Court made the following findings of fact:

1.  Stryker Corporation and XL Insurance America Inc. intended that the Commercial Umbrella Policy, as modified by the Medical Products Endorsement, would cover all claims and lawsuits involving products in a single batch, if bodily injury took place after January 1, 2000.

2.  The following individuals suffered bodily injury from a defective Duracon Uni-Knee between January 1, 2000, and January 1, 2001: Dorothea Alexander, Nancy Bartlett, Arnold Braswell, Debbie Brickman, Sam Bridgers, Elaine Brincefield, Mary Burns, Norman Chaney, Barbara Cox, James Crouch, Chauncey Custer, Delores Doeding, James Eccles, Wilma Ednie, Richard Fields, Winifred Fisher, Leonard Forman, Marguerite Fry, Paul Gaffney, Fred Galzerano, Oscar Garcia, Lawrence Glahe, Rita Griggs, Doris Horn, Freda Inlow, Carol Johansen, Eileen Johnson, Linda Kamen, Nirmal Khanna, Donald King, Barbara Kingdom, Diane Kitchens, Dorothy Kuethe, Christa Kulbe, James Laird, Suzanne Ledbetter, David Lell, George Lewett, Ann Lueders, Ruth MacEwen, Donald Major, Roy Martin, Theda Massie, Stella Matalas, Betsy McKelvain, Norman Melancon, Michael Moffat, Pam Murray, Peter Nelson, Carmen O'Leary, Shirley Olsen, Dora Orr, David Orrik, Saul Penn, Donald Priest, Francis Reidy, Evelyn Rogers, Norman Rosen, Richard Schulze, Ira Seiler, Delbert Sheffler, Sharon Shultz, John Soho, Gerald Spreen, Hugo Thornton, Joan Thorsness, Virginia Tilford, Joel Tuitt, Barbara Ward, William Ways, Althea Wenzel, Margaret Wilks, Donna Zalusky-Nova and Patricia Zoeckler.

3.  The following individuals did not suffer bodily injury from a defective Duracon Uni-Knee between January 1, 2000, and January 1, 2001: Nancy Burkhard, Leslie Carr and Delbert Napier.

4.  Stryker Corporation and XL Insurance America Inc. intended that the last sentence of paragraph three of the Medical Products Endorsement would apply to any employee of Stryker Corporation or Howmedica Osteonics Corporation.

3

5.      Prior to January 1, 2000, no employee of Stryker Corporation knew or suspected that Duracon Uni-Knees were available in inventory for implantation by physicians beyond their shelf life.

6.      Prior to Jaury 1, 2000, no employee of Howmedica Osteonics Corporation knew or  suspected that Duracon Uni-Knees were available in inventory for implantation by physicians beyond their shelf life.

(*Id.* at 32-33.)  The Court then explained its conclusions of law as follows:

Plaintiffs have established the prima facie elements for coverage under the Policy by a preponderance of the evidence. *See supra* Part II. XLIA has not established that any of the exclusions in the Policy are applicable to Plaintiffs. *See supra* Part III. Therefore the Court makes the following conclusions of law:

1.      Stryker Corporation is entitled to batch coverage under the Commercial Umbrella Policy for the batch of defective Duracon Uni-Knees defined by the July 28, 2000, advisory memorandum.

2.      XL Insurance America Inc. had and continues to have a duty to defend and a duty to indemnify Stryker Corporation for the batch of defective Duracon Uni-Knees defined by the July 28, 2000, advisory memorandum.

(04/03/2007 Op. 33.)  Although Phase II of the 2001 Stryker Case is ongoing, the Court has

resolved one issue as a matter of summary judgment.  The Court held that as a consequence

of the Sixth Circuit's interpretation of Michigan insurance law in *Capitol Reproduction, Inc.*

*v. Hartford Insurance Co.*, 800 F.2d 617, 624 (6th Cir. 1986), XLIA is liable to Stryker for

the self-insured retention as a consequence of XLIA having breached its duty to defend.

(File No. 4:01-CV-157, Dkt. No. 949, 01/04/2008 Op. 12-18.)

Pfizer's lawsuit against Stryker, *Pfizer v. Stryker*,  arose from Stryker's acquisition

of certain assets of Howmedica Inc., a subsidiary of Pfizer.   Stryker's acquisition was

memorialized in the Stock and Asset Purchase Agreement ("Asset Purchase Agreement")
between Pfizer and Stryker.  (Dkt. No. 70, Third Am. Compl., Ex. H, Asset Purchase
Agreement.)  In *Pfizer v. Stryker*, the court determined on summary judgment that under the
Asset Purchase Agreement, Stryker "shall indemnify, defend and hold Pfizer harmless for
all Losses, as defined in the Purchase Agreement, other than punitive damages from third
party claims relating to [DUKs] sold after December 4, 1998, and reimburse Pfizer for its
reasonable attorney's fees in connection with the instant declaratory judgment action." (Dkt.
No. 97, Pls.' Br. in Supp. re: XLIA, Ex. D, *Pfizer v. Stryker*, No. 02-CV-8613, slip op. at
49 (S.D.N.Y. Dec. 2, 2004.)  Based on the verdict from a jury trial on damages, the court
entered an interlocutory judgment in favor Pfizer.  (Pls.' Br. in Supp. re: XLIA, Ex. F, *Pfizer
v. Stryker*, No. 02-CV-8613, slip. op. (S.D.N.Y. Apr. 20, 2005).)  The judgment was
interlocutory because Stryker's counterclaims against Pfizer remain pending.  However, the
*Pfizer v. Stryker* case has been stayed pending the outcome of this lawsuit.

The underlying claims and lawsuits for which Pfizer sought indemnification from
Stryker involve thirty-eight individuals.  Thirty-seven of those thirty-eight individuals are
individuals whom the Court concluded suffered bodily injury from a defective Duracon
Uni-Knee between January 1, 2000, and January 1, 2001, in the 2001 Stryker Case.

## II.  Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is
proper if there is no genuine issue as to any material fact and the moving party is entitled to
judgment as a matter of law.  In evaluating a motion for summary judgment the court must

look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim, then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see generally*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

When the moving party has the burden of proof, however, a somewhat different standard applies. "'[W]here the moving party has the burden – the plaintiff on a claim for relief or defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "[I]f the moving party also bears the burden of persuasion

6

at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)).  Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Plaintiffs' Prima Facie Case

### A.    Issue Preclusive effect of the 2001 Stryker Case

"Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."[2] *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).  Subject-matter jurisdiction in the instant case and in the 2001 Stryker Case is based on diversity jurisdiction.  In successive diversity actions, federal law determines the issue preclusive effect of the first diversity action.  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006); *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996).  The Sixth Circuit has identified four requirements for issue preclusion:

---

[2]The parties have predominantly used the term "collateral estoppel" in their briefing; however, the Sixth Circuit has indicated that it is a better practice to use the term "issue preclusion" in place of the term "collateral estoppel." *Heyliger*, 126 F.3d at 852.

> 1) the issue precluded must be the same one involved in the prior proceeding; 2) the issue must actually have been litigated in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom [issue preclusion] is asserted a full and fair opportunity to litigate the issue.

*Central Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 259 (6th Cir. 1991) (citing

*N.L.R.B. v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir. 1985)).

Under federal law there does not need to be a final judgment in the prior diversity action for

issue preclusion to have effect; rather, all that is necessary is a "final decision with respect

to the issue to be given preclusive effect . . . ." *Am. Postal Workers Union, Columbus Area*

*Local AFL-CIO v. U.S. Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984).  There is no dispute

as to the fourth factor; however, XLIA and TIG raise issues as to the first three factors.  TIG

does not make any contention that it is not in privity with XLIA with respect to the 2001

Stryker Case.  TIG acknowledges that:

> the 2000 TIG Policy "follows form" to the definitions, terms, conditions, limitations and exclusions in the 2000 XLIA Policy.  Thus, the coverage issues presented as to whether coverage under the TIG Policy is triggered in this case turn solely on interpretation of [the] underlying 2000 XLIA Policy. For this reason, TIG incorporates and adopts the arguments set forth in XLIA's Brief in Opposition to Plaintiffs' Motion for Summary Judgment as to why there is no coverage for this matter under the TIG Policy.

(Dkt. No. 107, TIG's Resp. in Opp'n 3.)  The Court will address issue preclusion in each

of the specific questions presented by these motions.

**B.    Prima facie showing of coverage under the 2000 XLIA Policy**

In order to make a prima facie showing of coverage under the 2000 XLIA Policy for

Stryker's liability to Pfizer as determined in *Pfizer v. Stryker*, Plaintiffs need to show: (1)

that they are "legally obligated to pay by reason of liability . . . assumed by the Insured under an Insured Contract," (2) "in excess of the Retained Limit," (3) "because of Bodily Injury . . . that takes place during the Policy Period," and (4) "is caused by an occurrence." (Dkt. No. 97, Pls.' Br. in Supp. re: XLIA, Ex. G, 2000 XLIA Commercial Umbrella Policy ("2000 XLIA Policy") § I.)

1. **Asset Purchase Agreement between Pfizer and Stryker as an "insured contract" under the 2000 XLIA Policy**

Plaintiffs contend that the Asset Purchase Agreement is an "insured contract" under the 2000 XLIA Policy. XLIA concedes that the Asset Purchase Agreement is an "insured contract" under the 2000 XLIA Policy, but nonetheless contends that the 2000 XLIA Policy does not provide coverage for Stryker's liability to Pfizer as determined in *Pfizer v. Stryker*. (Dkt. No. 104, XLIA's Resp. in Opp'n 2.) XLIA argues that because there is some ambiguity as to Stryker's obligations under the Asset Purchase Agreement there is uncertainty as to XLIA's "insured contract" obligations.

Section I of the 2000 XLIA Policy provides in pertinent part that:

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world.

(2000 XLIA Policy § I.) Section IV.F of the 2000 XLIA Policy defines "Insured Contract" as

any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(2000 XLIA Policy § IV.F.)

XLIA argues that the Asset Purchase Agreement is ambiguous based on paragraph 8.4 of the Agreement. Paragraph 8.4 provides in pertinent part that the indemnifying party

shall have the right, but not the obligation, to conduct and control, through counsel of its choosing, any third party claim, action, or suit (a "Third-Party Claim"), and the Indemnifying Party may compromise or settle the same, provided that the Indemnifying Party shall give the Indemnified Party advance notice of any proposed compromise of [sic] settlement.  No indemnified Party may compromise or settle any Third-Party Claim for which it is seeking indemnification hereunder without the consent of the Indemnifying Party. The Indemnifying  Party shall permit the Indemnified Party to participate in, but not control, the defense of any such action or suit through counsel chosen by the Indemnified Party, provided that the fees and expenses of such counsel shall be borne by the Indemnified Party.  If the Indemnifying Party elects not to control or conduct the defense or prosecution of a Third-Party Claim, the Indemnifying Party shall have the right to participate in, but not conduct or control, the defense or prosecution of any Third-Party Claim and, at its own expense, to employ counsel of its own choosing for such purpose.

( XLIA's Resp. in Opp'n 11 (quoting Asset Purchase Agreement § 8.4).)[3]  XLIA argues that

section 8.4 creates ambiguity as to how third-party claims against the Indemnified Party are

to be handled.  Stryker's obligation to defend and indemnify Pfizer is set forth in section 8.2

of the Asset Purchase Agreement:

Section 8.2.   <u>Indemnification by Purchaser.</u>

---

[3]No party has disputed that this is the language of section 8.4 of the Asset Purchase Agreement.  However, no party has provided section 8.4 of the Asset Purchase Agreement. The record does contain parts of the Asset Purchase Agreement, but not section 8.4.

(a) Purchaser agrees to defend, indemnify and hold harmless the Seller Corporations and their Affiliates, and if applicable, their respective directors, officers, agent, employees, successors and assigns from and against any and all Loss claimed or arising directly from (i) any Assumed Liability, (ii) any breach by Purchaser of any of its covenants or agreements in this Agreement, (iii) any breach of any warranty or representation of Purchaser contained in this Agreement, or (iv) events occurring on or after the Closing Date in connection with the Business (other than the Excluded Assets and the Retained Liabilities), the Conveyed Assets, or the Shares including, without limitation, the use, ownership, possession, operation or occupancy of any Facility, Leased Real Property or Real Property, the Intellectual Property of the Business, the Conveyed Assets, or the Shares or the Conveyed Subsidiaries from and after the Closing Date.

(b) Seller Corporations shall take and shall cause its affiliates to take all reasonable steps to mitigate any Loss upon becoming aware of any event which would reasonably be expected to, or does, give rise thereto.

(c) Nothing in this Section 8.2 shall be construed to impose liabilities with respect to Taxes.

(Asset Purchase Agreement § 8.2.)

The interpretation of contracts is a question of law. *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 47, 664 N.W.2d 776 (2003); *Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402, 408, 646 N.W.2d 170 (2002). "'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate.'" *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 197, 702 N.W.2d 106 (2005) (quoting *McIntosh v. Groomes*, 227 Mich. 215, 218, 198 N.W. 954 (1924)). The language of the parties "is the best way to determine what the parties intended." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 476, 663 N.W.2d 447 (2003). "'A contract is said to be ambiguous when its words may reasonably be understood in different ways. . . . Yet if a contract, however inartfully worded or clumsily arranged,

11

fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.'" *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566, 596 N.W.2d 915 (1999) (quoting *Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 362, 314 N.W.2d 440 (1982))

Section 8.4 does not diminish Stryker's obligation under section 8.2 to "to defend, indemnify and hold harmless the Seller Corporations and their Affiliates . . . ." XLIA is correct that under section 8.4 Stryker is not obligated to conduct and control the defense of Pfizer, but Stryker is obligated to defend Pfizer. When read in conjunction, sections 8.2 and 8.4 impose an obligation on Stryker to defend Pfizer, while permitting Stryker to defer to Pfizer's conduct of that defense. Section 8.4 identifies who, Pfizer or Stryker, is responsible for the conduct and control of Pfizer's defense and what role the party not conducting or controlling Pfizer's defense may play. The absence of language in section 8.4 negating Stryker's obligation under section 8.2 to pay for Pfizer's defense is made clear by the provisions in 8.4 that identify when Pfizer would be obligated to pay for its own defense counsel. Pfizer must pay for its own defense counsel when Pfizer wants to participate in its own defense in relation to a claim in which Stryker has decided to have Stryker's counsel conduct and control Pfizer's defense. (Asset Purchase Agreement § 8.4 ("The Indemnifying Party shall permit the Indemnified Party to participate in, but not control, the defense of any such action or suit through counsel chosen by the Indemnified Party, provided that the fees and expenses of such counsel shall be borne by the Indemnified Party.").) If Stryker was not otherwise obligated to pay for Pfizer's defense, explicit language allocating certain

12

expenses to Pfizer would be unnecessary. Thus, as a matter of law, Stryker is legally obligated as a matter of contract to defend Pfizer in claims covered by the Asset Purchase Agreement.

XLIA next argues that the "insured contract" coverage of the 2000 XLIA Policy does not extend to the Asset Purchase Agreement because Pfizer is not an "insured." The interpretation of an insurance policy is a question of law. *Wilkie*, 469 Mich. at 47. Michigan considers an insurance policy to be a contract, subject to the general rules of interpretation that apply to all other contracts, not a special set of rules unique to insurance policies. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d 23 (2005). Section I of the 2000 XLIA Policy provides in pertinent part that:

> We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract . . . .

(2000 XLIA Policy § I.) There is no requirement in this language that an Insured Contract be with another Insured. XLIA's proposed reading of section I would change the phrasing to "assumed by the Insured under an Insured Contract *with another Insured*." Those last three words do not appear in the 2000 XLIA Policy and XLIA has not articulated how the definition of Insured Contract would justify reading those words into the Policy. The definition of Insured Contract states that an Insured Contract is one in which Stryker assumes "the tort liability of another party," (2000 XLIA Policy § IV.F), not the tort liability of another Insured. Most importantly, XLIA's proposed reading of section I would deprive the "assumed by the Insured under an Insured Contract" language of any practical meaning.

13

If the other party to an Insured Contract is an Insured, then the other party would be covered as an Insured without recourse to consideration of an Insured Contract.

Consequently, as a matter of summary judgment, Stryker's obligations to Pfizer under the Asset Purchase Agreement satisfy the "legally obligated to pay by reason of liability assumed by the Insured under an Insured Contract" requirement of section I of the 2000 XLIA Policy.

XLIA contends that even if Stryker's obligations under the Asset Purchase Agreement qualify for coverage under the Insured Contract provision of the 2000 XLIA Policy, coverage under the Insured Contract provision is limited to Pfizer's tort damages and excludes attorney's fees and costs. XLIA bases this contention on the language in section I that XLIA "will pay on behalf of the Insured those sums . . . that the Insured becomes legally obligated to pay by reason of liability . . . assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury . . . ." (2000 XLIA Policy § I.) XLIA also emphasizes that the definition of an Insured Contract is "any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to a third person or organization." (2000 XLIA Policy § IV.F.) The "bodily injury" language defines the types of contracts that can be considered Insured Contracts, but it does not limit the scope of the coverage for contracts that meet that definition. Thus, the "bodily injury" language must be used to assess whether the Asset Purchase Agreement is an Insured Contract, but once that

determination is made, the "bodily injury" language no longer limits coverage.   The "bodily injury" language in sections I and IV.F would preclude Stryker from seeking Insured Contract coverage for a contract in which Stryker assumed the liability that a third-party incurred for breach of contract.   Thus, to the extent that Stryker is entitled to Insured Contract coverage for the Asset Purchase Agreement, that coverage includes attorney's fees and costs.

### 2.       Exhaustion of the Self-Insured Retention

Plaintiffs contend that XLIA breached its duty to defend with respect to the *Pfizer v. Stryker* lawsuit and that as a consequence of that breach Plaintiffs are not obligated to satisfy the self-insured retention with respect to the *Pfizer v. Stryker* lawsuit.   Plaintiffs base this contention on the Court's January 4, 2008, opinion in the 2001 Stryker Case.   On January 4, 2008, in the 2001 Stryker Case the Court held that under the Sixth Circuit's decision in *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617, 624 (6th Cir. 1986), as a consequence of XLIA breaching its duty to defend, the self-insured retention was inapplicable.   (01/04/2008 Op. 17-18.)   Before the Court can address the issue preclusive effect, if any, of the Court's analysis in the 2001 Stryker Case of *Capitol Reproduction*'s application to the self-insured retention, the Court must first determine whether as a matter of summary judgment XLIA breached the duty to defend.

Section F of the Conditions portion of the 2000 XLIA Policy provides:

1.       You must see to it that we are notified as soon as practicable of an Occurrence which may result in a claim under this policy.   To the extent possible, notice should include:

a.      how, when and where the Occurrence took place;

b.      the names and addresses of an injured persons and witnesses; and

c.      the nature and location of any injury or damage arising out of the Occurrence.

(2000 XLIA Policy, Conditions, § F.)  On May 23, 2001, XLIA acknowledged receipt of notice of forty-five claims and twenty lawsuits related to the DUKs.  (Pls.' Br. in Supp. re: XLIA, Ex. A, Letter from Peter H. Duncan, Senior Claims Examiner, Winterthur, to Curtis Hall, Gen. Counsel, Stryker (Oct. 11, 2001) 2.)  This group of claims includes thirty-four of the thirty-eight claims at issue.  Stryker provided notice to XLIA of the remaining four claims by letters dated January 3, 2002, January 22, 2002, February 22, 2002, and May 15, 2002.  (Dkt. No. 113, Pls.' Reply in Supp. re: XLIA, Exs. 1-4.)  The 2000 XLIA Policy only requires notice of the claims and XLIA acknowledged that it had received notice of thirty-four of the thirty-eight claims on May 23, 2001.  The four letters sent in 2002 provided notice as to the four remaining claims.

XLIA contends that the notice was insufficient because Michigan requires a formal tender and cites three cases in support of this proposition. *Celina Mut. Ins. Co. v. Citizens Ins. Co.*, 133 Mich. App. 655, 349 N.W.2d 547 (1984); *Detroit Automobile Inter-Insurance Exchange v. Higginbotham*, 95 Mich. App. 213, 290 N.W.2d 414 (1980); *Am. Mut. Ins. Co. v. Mich. Mut. Liab. Co.*, 64 Mich. App. 315, 235 N.W.2d 769 (1975).  However, the Michigan Supreme Court has stated that: "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as*

16

written." *Rory*, 473 Mich. at 468 (footnote omitted). *See also Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 44 F. Supp. 2d 847, 858-59 (E.D. Mich. 1997) (declining to follow *Celina Mutual*, *Detroit Automobile*, and *American Mutual* based on the Michigan Supreme Court's decision in *American Bumper and Manufacturing Co. v. Hartford Fire Insurance Co.*, 452 Mich. 440, 455, 550 N.W.2d 475 (1996)).  The 2000 XLIA Policy requires notice and by XLIA's own account XLIA received notice for thirty-four of the claims on May 23, 2001. As for the remaining four claims, no evidence has been offered that the four letters sent in 2002 were materially different from the notice acknowledged on May 23, 2001.  There is not a genuine issue of material fact as to XLIA having received notice of the DUK claims that underlie the *Pfizer v. Stryker* lawsuit.  There is also not a genuine issue of material fact as to XLIA not having defended Stryker in *Pfizer v. Stryker*.  Thus, as a matter of summary judgment, XLIA breached its duty to defend Stryker in *Pfizer v. Stryker*.

As XLIA breached its duty to defend Stryker in *Pfizer v. Stryker*, the Court must determine the issue preclusive effect of the Court's analysis in the 2001 Stryker Case of *Capitol Reproduction*'s application to the self-insured retention.  In a January 4, 2008, opinion in the 2001 Stryker Case the Court held that as a consequence of XLIA breaching the duty to defend with respect to the claims at issue in the 2001 Stryker Case, XLIA was not entitled to the benefit of the self-insured retention under Michigan law as Michigan law had been interpreted by the Sixth Circuit in *Capitol Reproduction*.  (01/04/2008 Op. 12-18.) As the Court has determined as a matter of summary judgment that XLIA breached the duty to defend with respect to *Pfizer v. Stryker* under the 2000 XLIA Policy, the Court is

confronted with the same question about the self-insured retention as was presented in the 2001 Stryker Case.  The question of the inapplicability of the self-insured retention was the subject of a  summary judgment motion in the 2001 Stryker Case, so the question was actually litigated in that case.  The status of the self-insured retention was a critical and necessary part of the 2001 Stryker Case as the motion for summary judgment determined that XLIA was obligated to indemnify Stryker for the $2 million that otherwise would have been excluded by the self-insured retention.  In this lawsuit the self-insured retention is inapplicable because XLIA breached its duty to defend Stryker in *Pfizer v. Stryker*.  As the self-insured retention is inapplicable, Stryker shows that it has exhausted the self-insured retention by showing that it has been subjected to liability without necessarily showing liability in excess of the self-insured retention.  Stryker has shown as a matter of law that it is subject to liability in *Pfizer v. Stryker*.  Thus, as a matter of summary judgment, Stryker satisfied the requirement that under the Asset Purchase Agreement that it is obligated to pay an amount in excess of the self-insured retention.

### 3.    "Bodily injury" during the period of coverage for the 2000 XLIA Policy

Plaintiffs contend that issue preclusion bars XLIA from re-litigating whether the "bodily injury" requirement is met.  On April 3, 2007, in the 2001 Stryker Case the Court issued its opinion setting forth the Court's findings of fact based on the bench trial held in January and February of 2007.  In that opinion the Court found that:

> Stryker Corporation and XL Insurance America Inc. intended that the Commercial Umbrella Policy, as modified by the Medical Products

18

> Endorsement, would cover all claims and lawsuits involving products in a single batch, if bodily injury took place after January 1, 2000.

(04/03/2007 Op. 32.)  This finding was based on the intent of Stryker and XLIA in entering into the 2000 XLIA Policy.  That finding was made based on a five-day bench trial that had been preceded by a not insubstantial motions practice.  The question resolved by this finding was the subject of a significant amount of testimony during the bench trial and determined which of the claims at issue in the 2001 Stryker Case were covered by the 2000 XLIA Policy.  XLIA does not identify any specific reason why this finding of fact does not have issue preclusive effect in this case.  (XLIA's Resp. in Opp'n 25.)  Thus, as a matter of summary judgment, by operation of issue preclusion, there was "bodily injury" during the period of coverage for the 2000 XLIA Policy.

**4.     "Bodily injury" caused by an "occurrence"**

On July 14, 2006, in the 2001 Stryker Case the Court adopted the Magistrate Judge's recommendation that as a matter of summary judgment there had been an "occurrence" under the 2000 XLIA Policy with respect to the DUKs.  (File No. 4:01-CV-157, Dkt. No. 813, 07/14/2006 Op. 7-8;  *see also* 04/03/2007 Op. 6.)   Plaintiffs contend that this conclusion has issue preclusive effect in this case.  XLIA acknowledges the issue preclusive effect of the determinations in the 2001 Stryker Case that there was an "occurrence" as defined by the July 28, 2000, letter from Ned Lipes, which constitutes the "advisory memorandum" under the 2000 XLIA Policy.  (XLIA's Resp. in Opp'n 25.)  Thus, as a matter of summary judgment there was "bodily injury" caused by an "occurrence."

Plaintiffs have, as a matter of summary judgment, established a prima facie case of coverage under the 2000 XLIA Policy for Stryker's obligations to Pfizer as determined in *Pfizer v. Stryker*. Thus, the Court must turn to XLIA's affirmative defenses.

### IV.  XLIA's Affirmative Defenses

XLIA's answer to Stryker's third amended complaint alleges nineteen affirmative defenses.  (Dkt. No. 77, XLIA's Ans. 40-44.)  Plaintiffs move for summary judgment as to XLIA's affirmative defenses.

### A.    Affirmative Defenses 3, 8, 10, and 18

XLIA waived these affirmative defenses in its response to Plaintiffs' motion for summary judgment.  Thus, Plaintiffs are entitled to summary judgment on XLIA's third, eighth, tenth, and eighteenth affirmative defenses.

### B.    Affirmative Defenses 1 and 4 - Self-Insured Retention

XLIA's first and fourth affirmative defenses are based upon the self-insured retention not having been satisfied.  The Court already determined, as a matter of summary judgment, that the self-insured retention has been satisfied.  Thus, Stryker is also entitled to summary judgment on XLIA's first and fourth affirmative defenses.

### C.    Affirmative Defense 2 - Status of the *Pfizer v. Stryker* Judgment

XLIA's second affirmative defense is that Plaintiffs' claims are "contingent, preliminary, potential, or hypothetical."  XLIA bases this on the fact that *Pfizer v. Stryker* is still pending.  XLIA is correct that *Pfizer v. Stryker* remains pending and that the resolution of Stryker's counterclaims may reduce the judgment against Stryker.  However,

that does not bar judgment on Plaintiffs' breach of contract claim against XLIA.  XLIA has breached its duty to defend Stryker in *Pfizer v. Stryker* and Stryker is entitled to summary judgment to that effect.  Until a final judgment is entered in *Pfizer v. Stryker* the exact dollar value of XLIA's obligations cannot be determined, but that does not preclude the entry of a declaratory judgment in favor of Plaintiffs to the effect that the Stryker is entitled to indemnification under the 2000 XLIA Policy for the final judgment in *Pfizer v. Stryker* and for attorney's fees and costs.

**D.     Affirmative Defense 5 - "Multiple Occurrences"**

XLIA's fifth affirmative defense is that there were multiple occurrences.  As the Court explained with respect to Plaintiffs' prima facie case, the determination in the 2001 Stryker Case that there was a single batch and consequently a single occurrence defined by the July 28, 2000, letter from Ned Lipes has issue preclusive effect in this case.  Plaintiffs are entitled to summary judgment on XLIA's fifth affirmative defense.

**E.     Affirmative Defenses 6 and 7- The "known or suspected" exclusion**

The Medical Products Endorsement of the 2000 XLIA Policy excludes coverage for any defect that was known or suspected before January 1, 2000. XLIA contends that in the context of the "insured contract" coverage, the party whose knowledge is relevant is the third-party, in this case Pfizer.  Thus, XLIA contends that the Court's conclusion in the 2001 Stryker Case that Stryker did not know of the defect prior to January 1, 2000, is not dispositive, because here the inquiry would extend to whether Pfizer knew of the defect prior to January 1, 2000. The Medical Products Endorsement provides in pertinent part:

> Batch coverage shall not apply to any loss, which arises out of a defect, or deficiency that is known or suspected prior to 1-1-00.

(2000 XLIA Policy, Endorsement No. 17.)  In the 2001 Stryker Case the Court found the following facts in its April 3, 2007, opinion in relation to known or suspected exclusion.

> 4.    Stryker Corporation and XL Insurance America Inc. intended that the last sentence of paragraph three of the Medical Products Endorsement would apply to any employee of Stryker Corporation or Howmedica Osteonics Corporation.
>
> 5.    Prior to January 1, 2000, no employee of Stryker Corporation knew or suspected that Duracon Uni-Knees were available in inventory for implantation by physicians beyond their shelf life.
>
> 6.    Prior to January 1, 2000, no employee of Howmedica Osteonics Corporation knew or suspected that Duracon Uni-Knees were available in inventory for implantation by physicians beyond their shelf life.

(04/03/2007 Op. 32-33.)  Although the "insured contract" provision was not at issue in the 2001 Stryker Case, the breadth of the known or suspected exclusion was subject to much dispute.  Additionally, XLIA would have had reason to raise the possibility of the known or suspected exclusion extending beyond Stryker and Howmedica Osteonics in the 2001 Stryker Case because evidence of the exclusion applying beyond those two companies would have supported a broad reading as to the employees of Stryker and Howmedica Osteonics, which was the position that XLIA advocated in the 2001 Stryker Case.  As the question was previously litigated in the 2001 Stryker Case, the Court's finding in the April 3, 2007, opinion has issue preclusive effect in this case.  Thus, Plaintiffs are entitled to summary judgment on XLIA's sixth and seventh affirmative defenses.

**F.     Affirmatives Defenses 9, 11, 12, 13, 16, and 17 - Notice and Tender**

XLIA's ninth, eleventh, twelfth, thirteenth, sixteenth, and seventeenth affirmative defenses all involve some variation on Stryker's obligation to give notice of  and to tender the *Pfizer v. Stryker* litigation to XLIA.  As the Court earlier concluded that as a matter of summary judgment Stryker gave the notice required by the 2000 XLIA Policy, Plaintiffs are also entitled to summary judgment on XLIA's ninth, eleventh, twelfth, thirteenth, sixteenth, and seventeenth affirmative defenses.

**G.     Affirmative Defenses 14 and 15 - Damages**

XLIA's fourteenth and fifteenth affirmative defenses raise issues as to the specific amount of damages.  As the Court previously explained in relation to XLIA's second affirmative defense, and as acknowledged by Plaintiffs, Plaintiffs are not seeking a money judgment at this time.  (Pls.' Reply in Supp. re: XLIA 18.)  The determination of specific dollar amounts will depend on the final resolution of *Pfizer v. Stryker*, but Plaintiffs' right and XLIA's duties can be determined at this time.

**H.     Affirmative Defense 19 - Duty to Defend**

XLIA's nineteenth affirmative defense is premised on XLIA not having breached the duty to defend.  As the Court explained in relation to the self-insured retention, as a matter of summary judgment, XLIA has breached the duty to defend.

## V.  TIG

Plaintiffs seek to have the Court declare that under the 2000 TIG Excess Policy, TIG is liable for losses Plaintiffs have incurred in excess of the 2000 XLIA Policy.  TIG's

response concedes that the 2000 TIG Excess Policy follows the form of the 2000 XLIA
Policy.  TIG joins in XLIA's response to Plaintiffs' motion.  As the Court has determined
that Plaintiffs are entitled to summary judgment with respect to XLIA and the 2000 TIG
Excess Policy follows the form of the 2000 XLIA Policy, it necessarily follows that
Plaintiffs are entitled to summary judgment against TIG.

## VI. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' motions for summary
judgment against XLIA and TIG.  As the Court explained in relation to XLIA's affirmative
defenses, the judgment to which Plaintiffs are entitled at this time is not for a specific dollar
value.  The specific dollar value will be determined in *Pfizer v. Stryker*.  Plaintiffs are
entitled to the entry of judgment on Count I which alleges that XLIA breached its obligation
under the 2000 XLIA Policy to defend Stryker in *Pfizer v. Stryker*.  Plaintiffs are also
entitled to a declaratory judgment on Count II that XLIA is obligated to defend Stryker in
*Pfizer v. Stryker* and to indemnify Stryker for the final judgment entered in *Pfizer v. Stryker*
and for the attorney's fees and costs incurred by Stryker in its defense in *Pfizer v. Stryker*.
Lastly, Plaintiffs are entitled to a declaratory judgment on Count III that TIG is obligated
under the 2000 TIG Excess Policy to cover any loss in excess of the 2000 XLIA Policy.
Counts I and II were only alleged against XLIA, Count III was only alleged against TIG, and
Count IV was only alleged against National Union Fire Insurance Company of Pittsburgh,
PA.  As the Court's grant of Plaintiffs' two motions for summary judgment has resolved
Counts I, II, and III, only Count IV remains pending.  Thus, this case is resolved as to XLIA

and TIG, but remains pending as to National Union.  A partial judgment consistent with this

opinion will be entered.


Dated: <u>August 29, 2008</u>                           <u>/s/ Robert Holmes Bell</u>
                                                                    ROBERT HOLMES BELL
                                                                    UNITED STATES DISTRICT JUDGE