UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STRYKER CORPORATION, et al.,

    Plaintiffs,

v.

XL INSURANCE AMERICA, INC., and
TIG INSURANCE COMPANY,

    Defendants.

Case No. 1:05-cv-51

Honorable Robert Holmes Bell

**MEMORANDUM OPINION**

This matter is before the court on plaintiff's motion for leave to file a supplemental complaint. (docket # 341). Defendants strenuously oppose the motion on both procedural and substantive grounds. For the reasons set forth below, the motion will be granted with regard to defendant TIG Insurance Company and denied with regard to defendant XL Insurance America, Inc.

**Procedural History**

This is an insurance case with a long and tortured history. Recitation of only the most basic background facts is necessary for present purposes.

In the first action filed in this court, *Stryker Corp., et al. v. National Union Fire Insurance Company of Pa., et al.*, case no. 4:01-cv-157 ("*Stryker* I"), plaintiffs Stryker Corporation and Howmedica Osteonics Corp. (collectively Stryker) brought suit on a comprehensive general liability policy issued by defendant XL Insurance America, Inc. (XLIA). Stryker sought indemnity

for sums paid by Stryker to defend and settle personal injury claims alleging that a Stryker medical device (the Uni-Knee) was defective. That case has become known as "*Stryker* I."

Stryker brought the present case ("*Stryker* II") in 2005, against XLIA and the excess liability carrier TIG Insurance (TIG). The subject matter of Stryker's original complaint in this case was the obligation of XLIA to indemnify Stryker for all sums that Stryker was required to pay to Pfizer Corporation on claims against Pfizer for bodily injury allegedly caused by certain Duracon Uni-Knees. The original complaint alleged that Stryker's liability to pay Pfizer had been adjudicated by a federal district court in the Southern District of New York and that the liability so adjudicated was subject to indemnification by the insurance company defendants as an "Insured Contract" under their policies. The original complaint sought a declaration that each defendant was obligated "up to the limits of liability set forth in the policies, to indemnify Plaintiffs for any payment made to Pfizer as a result of the indemnification provisions" of the Pfizer asset purchase agreement. (Compl. at 8, docket # 1). With regard to the excess liability carrier, TIG, the complaint asserted that TIG was obliged to cover any loss in excess of the primary umbrella policy, up to TIG policy limits. (¶ 33).

Stryker amended its complaint in *Stryker* II three times, principally to allege developments in the *Pfizer v. Stryker* case in the Southern District of New York, including the entry of judgment against Stryker on April 20, 2005, in the amount of almost $18 million. With regard to XLIA, the subject matter of this action has always been limited to XLIA's liability under its policy to cover Stryker's obligations to Pfizer under the asset purchase agreement and then under the New York judgment. From the outset, however, Stryker's claim against TIG was for a declaration of

liability to cover any loss in excess of the primary umbrella policies. (3d Am. Compl. at ¶ 72, docket # 70).

On January 8, 2009, District Judge Robert Holmes Bell decided in favor of Stryker on the only claim asserted by Stryker against XLIA. The court held that XLIA, as part of its Insured Contract coverage, was required to indemnify Stryker for the New York judgment, plus Pfizer's costs and attorney fees. (Am. Op., docket # 161). The court also entered a declaratory judgment against TIG declaring its liability "under the 2000 TIG Excess Umbrella Liability Policy to cover any loss in excess of the" XLIA policy. (Am. Partial Jdg. at 2, docket # 162).

In an effort to resolve both *Stryker* I and *Stryker* II, on January 12 and 14, 2009, this court conducted a two-day settlement conference, involving Stryker, XLIA, TIG, and attorneys for Pfizer. (TIG's counsel left after the first day of the conference.) This conference was held only four days after Judge Bell had awarded Stryker a judgment of liability on its claims in *Stryker* II. Although the conference resulted in an agreement between Stryker and XLIA to resolve certain damages issues in *Stryker* I without a trial, the claims asserted by Stryker against XLIA in that case were not settled. By the end of the second day, however, XLIA had agreed to pay $26 million to Pfizer, satisfying Stryker's obligation to pay the *Pfizer v. Stryker* judgment entered in New York, in accordance with Judge Bell's recent judgment in *Stryker* II. Stryker did not participate in the conversations leading to the satisfaction by XLIA of Stryker's liability to satisfy the *Pfizer* judgment.

After settling the Pfizer claims, XLIA moved for a ruling that its liability to satisfy the *Pfizer* judgment had been met by the settlement payment and for a declaration that this payment exhausted its policy limits. By opinions entered October 7, 2009, in this case (docket # 195) and in *Stryker* I (docket # 1092), Judge Bell granted partial relief, finding that XLIA's liability to cover

Stryker for the *Pfizer* judgment had been satisfied, but declining to declare that this payment exhausted its policy limits. Judge Bell's ruling on the second issue was based on his finding that XLIA had forfeited its right to rely on the policy's self-insured retention (SIR) and policy limits by breaching its duty to defend. (Op., *Stryker* I, at 6-9, docket # 1092).

After the district court decided motions for reconsideration or clarification, all parties appealed to the Sixth Circuit. In *Stryker* II, the Court of Appeals affirmed in part and reversed in part. *See Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 681 F.3d 819 (6th Cir. 2012). The court found that TIG was not bound by the court's ruling in *Stryker* I, as it had not been a party to that case. The court found that TIG was not precluded from raising its own defenses to coverage, except those defenses that it had raised in a third case (called "*Stryker* III"), the judgment of which had never been appealed. 681 F.3d at 825. The court also determined that "Stryker may not attempt on remand to hold TIG liable for any pre-judgment interest that has been imposed thus far in this case." *Id.* at 826.

In the companion appeal, *Stryker Corp. v. XL Insurance America*, 681 F.3d 806 (6th Cir. 2012), the Court of Appeals affirmed Judge Bell's judgment against XLIA, with one major exception relevant to the present dispute. The court found that Judge Bell erred in denying XLIA the benefit of its $15 million policy limit and, at least inferentially, in denying it the benefit of the self-insured retention of $2 million. The court found that the principal case relied upon in the trial court, *Capital Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617 (6th Cir. 1986), no longer accurately reflects Michigan law. 681 F.3d at 814-15. The court remanded the matter on this issue, directing the district court to apply the $15 million policy limit and to award damages above this limit only if they could be deemed consequential damages under Michigan law. *Id.*

After remand, Judge Bell issued an opinion applying the holdings of the Court of Appeals to the question whether XLIA's satisfaction of the *Pfizer* judgment had exhausted its policy limits. (Op., docket # 304). Judge Bell determined that the clear import of the appellate ruling was to reverse his earlier decision to deny XLIA the benefit of *both* the SIR *and* the $15 million policy limit. With the benefit of both these limitations on its liability, XLIA had indeed exhausted its coverage by satisfying the *Pfizer* judgment. (Op. at 10).

After deciding the critical question of exhaustion of the XLIA policy limits, Judge Bell directed the parties to submit their positions concerning the issues remaining to be decided in each case. Relevant to the present dispute, Stryker contended that TIG should be added as a party to *Stryker* I (the case involving XLIA's liability to indemnity Stryker for Uni-Knee claims that Stryker itself had settled) and that the court allow Stryker to assert a new claim for consequential damages against XLIA arising from its allegedly wrongful decision to pay off the *Pfizer* judgment before paying Stryker. By report and recommendation issued April 22, 2013, I recommended that joinder of TIG to *Stryker* I after judgment would be prejudicial and that Stryker should not be allowed to amend its complaint in *Stryker* I to assert the claim for consequential damages, which had never been part of that litigation before the entry of final judgment. Noting the contingent and unripe nature of the claim for consequential damages, I suggested that this claim would most preferably be brought in a new lawsuit if and when the contingency matured. (R&R at 6, n.2, docket # 317). No one objected to the report and recommendation, which was adopted by Judge Bell on May 16, 2013. (docket # 319).

As a result of the court's denial of Stryker's efforts to expand the scope of *Stryker* I after remand, the court was able to enter a final judgment in that case on June 17, 2013, as all

pending claims against the only defendant, XLIA, had been adjudicated. (Final Judgment, docket # 1215). To no one's surprise, all parties have appealed.

Ten days after the entry of final judgment in *Stryker* I, Judge Bell issued an opinion denying Stryker's motion for summary judgment against TIG in *Stryker* II. (docket # 327). In its motion for summary judgment, Stryker contended that TIG has no defenses against Stryker's claims under the excess policy and that TIG is liable to pay for Stryker's settlement of Uni-Knee claims against it. By opinion and order entered June 27, 2013, Judge Bell determined that TIG is entitled to raise certain defenses based on the language of its excess policy and that genuine issues of material fact on at least one defense (Stryker's alleged failure to receive consent for settlements) precludes the entry of a summary judgment in favor of Stryker. After entry of the order denying plaintiff's motion for summary judgment, Judge Bell directed the holding of a status conference to set appropriate dates and deadlines for the resolution of claims remaining in *Stryker* II. As a result of that conference, an amended case management order was entered establishing jury trial for September 15, 2014, and setting other necessary dates and deadlines. (Am. Case Mgmt. Ord., docket # 337).

In summary, the present status of these protracted insurance disputes is as follows. All claims against XLIA have been resolved. XLIA has complied with the judgment against it in *Stryker* II by satisfying all of Stryker's obligations to Pfizer under the New York judgment. The court has declared that the payments made by XLIA to date have exhausted its obligation under its insurance policy. Therefore, XLIA is not required to indemnify Stryker for any further costs it has incurred in defending and settling the claims made directly against it, which was the subject matter of *Stryker* I. Judge Bell's determination that XLIA has no further obligation to Stryker is now on

appeal to the Sixth Circuit Court of Appeals. In *Stryker* II, the court has likewise declared that XLIA has met its obligation to indemnify Stryker for the claims made against it in the *Pfizer* case, which was the only claim against XLIA in *Stryker* II. At this juncture, the only claim pending is Stryker's demand in the present case for a declaratory judgment against TIG for indemnity against any loss in excess of the XLIA policies. (3d Am. Compl. at ¶ 72, docket # 70).

**Present Motion**

It is in this context that plaintiffs bring their motion to supplement their complaint against both XLIA and TIG in *Stryker* II. The proposed supplemental complaint would add new claims against both XLIA and TIG. The subject matter of the proposed supplemental complaint against XLIA is the $7.62 million in settlement payments that Stryker paid to settle Duracon Uni-Knee claims. As a result of this court's previous rulings, XLIA would not be liable under the terms of its policy to reimburse Stryker for these payments, because XLIA has exhausted its policy limits by satisfying the *Pfizer* judgment. The supplemental complaint contains two new claims against XLIA in an effort to collect this sum, despite the exhaustion of policy limits. These new theories of recovery arise from XLIA's decision to satisfy the *Pfizer* judgment before paying off Stryker's direct claims. Stryker contends that this decision, made in January of 2009, breached XLIA's implied duty of good faith. Second, Stryker asserts a promissory estoppel claim, arising from alleged assurances by XLIA that it would protect Stryker's interests, when in reality the satisfaction of the *Pfizer* judgment did not fully protect Stryker's interests. This claim is expressly described by Stryker as contingent, in that it arises only if the court finds that TIG is not responsible for the $7.62 million sought.

The proposed supplemental claims against TIG do not involve the 2009 *Pfizer* settlement. Rather, Stryker first seeks to assert a claim for damages for breach of contract against TIG, instead of its claim for merely declaratory relief. Stryker argues that its previous complaints sought only a declaration because the extent of TIG's liability was then unclear. Now, because the court has finally ruled that XLIA's policy limits are exhausted, TIG is in breach of its excess policy by failure to cover the claims not covered by XLIA. Second, the supplemental complaint would state a promissory estoppel claim against TIG based on alleged statements in favor of coverage made by the insurer, upon which Stryker allegedly relied to its detriment. As noted, both XLIA and TIG object to Stryker's request to supplement its complaint on numerous procedural and substantive grounds.

## Discussion

### A.     Standards Under Rule 15(d)

Motions to supplement pleadings are governed by Rule 15(d) of the Federal Rules of Civil Procedure, which provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.

The Sixth Circuit has long held that motions to file supplemental pleadings are within the discretion of the trial court. *See McHenry v. Ford Motor Co.*, 269 F.2d 18, 24 (6th Cir. 1959). Consequently, "there is no absolute right to expand the case" by supplemental pleadings; "the district court has substantial discretion either to permit or deny such a motion." *Chicago Reg'l Council of Carpenters v. Village of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). The district court's discretion whether

to grant or allow a motion to file a supplemental pleading is governed by similar standards to those that apply to motions to amend brought under Rule 15(a). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002). These factors include prejudicial delay, bad faith or dilatory motive by the moving party, failure to cure deficiencies by previous amendment, and futility. *See Bromley v. Mich. Educ. Ass'n - NEA*, 178 F.R.D. 148, 153-54 (E.D. Mich. 1998).

In addition to these general considerations, courts faced with requests to supplement pleadings inquire into the effect of the proposed new claims on the manageability and fairness of the proceedings. By definition, supplemental claims need not arise from the same transactions or occurrences as the original claims, as supplemental pleadings assert events that occurred after the time of the original pleading. *See Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988). Nevertheless, the assertion of new claims (as opposed to the pleading of new facts or changed circumstances in support of already pending claims) can raise concerns about the fairness and efficiency of the proceedings. Therefore, in the exercise of their discretion whether or not to allow supplementation, courts look to the interrelation of the proposed new claims with those already pending against the defendant. "There must be some relationship or linkage between the claims asserted in the original complaint and the supplemental claims." *Imelmann v. Mich. Dep't of Corr.*, No. 12-cv-10671, 2012 WL 2917514, at * 1 (E.D. Mich. July 17, 2012). "A court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts." *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988). Thus, leave to supplement may be denied if it would be fairer and more orderly to let the plaintiff raise the new claim in another lawsuit. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008).

The motion to file a supplemental complaint will be analyzed under these principles separately for each defendant.

**B.     XLIA**

All claims brought in this case against XLIA have been adjudicated. The only claim ever asserted against XLIA in this case was that the Insured Contracts provisions of its policy covered the judgment against Stryker entered in the Southern District of New York in the *Pfizer* case. On January 8, 2009, the court determined that XLIA was indeed responsible for satisfying the judgment against Stryker in the *Pfizer* litigation. Less than one week later, XLIA did exactly what it had been ordered to do by agreeing to pay that judgment on Stryker's behalf. By rights, this case should have been over with regard to XLIA at that point. The only reason that XLIA was not dismissed from the case was the trial court's reliance on the now repudiated *Capital Reproduction* case to deny XLIA the benefit of the SIR and policy limits provisions of its policy. That situation was remedied on appeal and the matter sent back for further proceedings. Judge Bell applied the appellate decision to the claims in this case and found that XLIA has exhausted its policy limits by satisfying the *Pfizer* judgment. The case against XLIA is now over -- Stryker has received everything it asked for against this defendant.

A grant of plaintiffs' motion to file a supplemental complaint against XLIA in this litigation would have the effect of keeping the lawsuit alive against XLIA, not with regard to its obligation to satisfy the *Pfizer* judgment (which it has done) but with regard to XLIA's alleged liability for Stryker's settlement costs in the direct claims against it, which has never been at issue in this case. Thus, a supplemental pleading would prolong an eight-year-old case against XLIA in

order to assert new claims against it. The proposed new claims against XLIA are completely unrelated to any pending claim against that defendant, because there are none.

Plaintiffs assert that a complaint may be supplemented after remand, and so it can be. For example, the case cited by plaintiffs, *Bromley v. Michigan Education Association - NEA*, involved a claim by non-union members for recovery of improperly assessed agency fees. The trial court dismissed the case on summary judgment, but the court of appeals vacated and remanded. On remand, the trial court allowed plaintiffs to supplement their pleadings to allege similar violations arising in years subsequent to the filing of the complaint. 178 F.R.D. at 154-55. This is a typical use of supplementation under Rule 15(d), which allows a plaintiff to allege new facts which are "'really part of the original case.'" *Id.* at 154 (quoting *McHenry*, 269 F.2d at 25). The principal case regularly cited for this proposition, *City of Texarkana, Tx. v. Arkansas, Louisiana Gas Co.*, 306 U.S. 188 (1939), involved a claim for refund of utility payments. In remanding the case for further proceedings, the Court directed that leave should be granted "to bring to date the controversy over refund of rates" collected subsequent to the time the case was filed. "Where there is a good cause of action stated in the original bill, a supplemental bill setting up facts subsequently occurring justifying other or further relief is proper." 306 U.S. at 203.

Plaintiffs have cited no case, however, in which a plaintiff has been allowed to supplement its complaint after remand to allege an entirely new cause of action, after all claims against a defendant have been adjudicated and the defendant had satisfied the judgment. The fact that judgment has been entered is a factor militating towards denial, leaving the litigant the option of bringing a new suit on the new claim. *See Chicago Reg'l Council of Carpenters*, 644 F.3d at 356-57. Thus, while adding brand new claims after remand might be technically possible, in many cases

it is unwise. *See Cason v. Seckinger*, 231 F.3d 777, 786-87 (11th Cir. 2000) (district court did not abuse its discretion by denying leave to supplement to add a new claim after entry of consent decree, which would have "needlessly prolonged already protracted litigation," in view of plaintiffs' ability to file new lawsuit).

From the standpoint of fairness to the litigants and the orderly disposition and management of litigation, adding these supplemental claims to this case makes even less sense than adding them to *Stryker* I. At least *Stryker* I involved XLIA's obligation to cover Stryker's costs in settling the direct claims against it. The present case never involved those issues. Added to these considerations is the fact that Stryker's supplemental claims against XLIA are admittedly contingent. If TIG is found responsible to cover Stryker's expenditure of $7.6 million in settling these claims, Stryker will have no cause of action against XLIA. It would border on an abuse of discretion to prolong this litigation against a defendant who has satisfied the judgment against it for the purpose of asserting a claim that the very satisfaction of that judgment was wrongful.

Stryker has asserted its intention to file a new lawsuit if its motion to supplement is denied. A new lawsuit filed if and when the contingency is satisfied is certainly preferable to perpetuation of the present litigation.

### C. TIG

The motion to supplement claims against TIG stands on different procedural footing. Unlike the proposed supplemental claims against XLIA, which are new claims unrelated to the core issue of this case, the proposed claims against TIG are intimately related to the claim now pending against it. Proposed count I against TIG would merely convert the relief sought from a declaratory

judgment to an award of damages for breach of contract. Proposed count II would assert a claim for promissory estoppel against TIG. Although this is a new theory, it relates to the same fundamental issue that has always been involved in this case -- TIG's liability to cover Stryker's losses in excess of the XLIA policy. And, unlike the proposed claims against XLIA, the motion to supplement the complaint against TIG does not seek to assert claims against a defendant who has already satisfied the judgment against it. TIG was successful in persuading the Court of Appeals that it never really had its day in court with regard to its liability on the excess policy. Now that the case has been remanded, all legitimate claims and defenses regarding liability on the excess policy should be joined in a single proceeding.

TIG's procedural arguments to the contrary are not substantial. With regard to Stryker's request to update its complaint, on the basis of subsequent events, to seek money damages instead of a declaratory judgment, TIG acts as if this amendment would somehow change the fundamental nature of the case against it. This argument misapprehends the nature of a declaratory judgment action. The Supreme Court has long held that the Declaratory Judgment Act is procedural only and does not affect the substantive rights of the parties. *See Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 508-09 (1959); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). A declaratory judgment action merely provides "a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2751 at 456 (3d ed. 1998). A declaratory judgment is not a claim; it is a remedy.

> As a threshold matter, "declaratory relief is not a claim but only a remedy that Congress has created so that the court 'may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought.'" *In re Methyl Tertiary Butyl Ether Prods. Liability Litig. ("In re MTBE")*, 247 F.R.D. 420, 422 (S.D.N.Y. 2007) (quoting 28 U.S.C. § 2201); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("The Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action."); *Bristol–Meyers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F. Supp. 2d 499, 506 (S.D.N.Y. 2005) (describing a declaratory judgment as a "remedy"); *Travelers Property Cas. Corp. v. Winterthur Int'l*, No. 02 Civ. 2406, 2002 U.S. Dist. LEXIS 11342, at *15 (S.D.N.Y. June 25, 2002) ("A declaratory judgment is a remedy. Its availability does not create an additional cause of action...."). Indeed, the very statute that provides for the issuance of declaratory judgments is entitled "Creation of remedy." 28 U.S.C. § 2201. "The claim, or the 'legal theory under which relief is sought,' must be based on other laws that the defendant allegedly violated in order to receive [declaratory] relief." *In re MTBE*, 247 F.R.D. at 422 (quoting *In re MTBE*, 2007 WL 2781946, at *1 (S.D.N.Y. Sept.20, 2007)); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731 (stating that "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief").

*Wyly v. CA, Inc.*, No. 05-cv-4430, 2009 WL 3128034, at * 5 (E.D.N.Y. Sept. 29, 2009).

Thus, Stryker's original cause of action against TIG was not "declaratory judgment," but was a claim for breach of contract, with declaratory judgment being the remedy sought. In 2005, when this case was filed, Stryker could not have brought a breach of contract action for damages against TIG, as no one then contended that Stryker's losses had yet reached the excess layer of coverage provided by TIG. But there was an actual case or controversy arising from TIG's denial of coverage, so seeking a declaratory judgment remedy was proper. The supplemental complaint would not change the nature of the claim against TIG, which at all times remains a claim for breach of contract. The only effect of the proposed supplementation of count I would be to seek a damages remedy on the basis of events that occurred after the filing of the third amended complaint. Supplementation of a claim merely to change the amount or nature of the relief requested in the

-14-

original pleading falls within the heartland of Rule 15(d). *See, e.g., Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 668 F. Supp. 906, 923 (D. Del. 1987) (plaintiff granted leave to file supplemental complaint to request injunction six and a half years after original complaint because supplemental complaint raised only a new form of relief, with the underlying cause of action remaining "exactly the same"); *Miller Brewing Co. v. Acme Process Equip. Co.*, 464 F. Supp. 856 (E.D. Wis. 1979) (allowing amendment of complaint seeking only declaratory judgment to add claim for damages).[1]

TIG also argues that Stryker waited too long to assert its supplemental claims. This is both legally and factually unpersuasive. Legally, the Sixth Circuit consistently holds that delay alone is not sufficient grounds to deny leave to amend. *See Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). Rather, the delay must have been unduly prejudicial to the opposing party. *See Bridgeport Music, Inc. v. Dimensions Films*, 410 F.3d 792, 806 (6th Cir. 2005). TIG is not able to articulate any relevant prejudice, such as the loss of evidence or an inability to meet the new claims. Factually, Stryker correctly points out that until the court decided that XLIA had exhausted its policy limits in June of this year, the extent of Stryker's claim against TIG under the excess policy was not ascertainable.

Finally, TIG argues that the amendment of count I is designed to allow Stryker to assert an unfair claim for statutory pre-judgment interest dating back to the filing of the complaint. This objection attempts to adjudicate the merits of Stryker's supposed claim for pre-judgment interest in the context of a motion to amend. The Sixth Circuit holds that a motion to amend or

---

[1] It is not even clear that an amendment is needed in these circumstances. FED. R. CIV. P. 54(c) (second sentence); *see Kaszuk v. Bakery & Confectionary Union Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986) (court can award injunctive relief, even if not prayed for).

supplement is not futile unless it fails to state a claim upon which relief can be granted. *See Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010). Any party asserting a breach of contract has the right to ask for pre-judgment interest. Whether the interest will actually be awarded is a question for a much later day. TIG's arguments in this regard are better addressed to the court if, as and when the court enters judgment against it and Stryker seeks an award of pre-judgment interest.

Count II of the proposed supplemental complaint asserts a promissory estoppel theory. This theory is intimately intertwined with the merits of the claim now pending against TIG. Properly understood, it is not a new claim for relief at all, but a reply to TIG's assertion of certain policy defenses. Unlike the proposed claims against XLIA, Stryker cannot assert this promissory estoppel claim in a separate lawsuit. Count II is not an independent claim for relief, but, if proven, would preclude TIG from relying on certain defenses to Stryker's underlying breach of contract claim.

In addition to the insubstantial procedural arguments discussed above, TIG raises similarly insubstantial substantive objections to count II of the proposed supplemental complaint. First, TIG argues that amendment would be futile, because a promissory estoppel claim would be meritless in the circumstances of this case. To the contrary, Michigan courts recognize that an insurer may be estopped to deny coverage on the basis of its promises and statements to the insured, made after a dispute concerning coverage arises. *See, e.g., Huhtala v. Traveler's Ins. Co.*, 257 N.W.2d 640 (Mich. 1977); *LaMothe v. Auto Club Ins. Ass'n*, 543 N.W.2d 42, 45-46 (Mich. Ct. App. 1995). The elements of promissory estoppel under Michigan law are (1) a promise (2) that the promissor should reasonably have expected to induce action of a definite and substantial character

on the part of the promissee, (3) which in fact produced reliance, (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 166 (Mich. Ct. App. 2008). Count II of the proposed complaint is sufficient to allege a claim of promissory estoppel under these authorities.

In a related argument, TIG says that count II is unduly prejudicial to TIG, because it forces TIG "again to address the argument that it is not entitled to assert its defenses in *Stryker* II -- an argument that has been rejected by the Sixth Circuit and the District Court." (Brief at 1, docket # 339). This argument is amusing, but not persuasive. The Court of Appeals has squarely held that TIG is entitled to assert its policy defenses in this case, to the extent that those defenses were not precluded by the *Stryker* III judgment. *Stryker Corp. v. Nat'l Union Fire Ins. Co.*, 681 F.3d at 824-25. Judge Bell has recently denied Stryker's motion for summary judgment in accordance with that ruling. (Op. at 10-20, docket # 327). The chances that any judicial officer assigned to this case will hereafter ignore the square holding of the Court of Appeals in *Stryker* II are nil. Finally, the fact that both Judge Bell and the Court of Appeals have rejected the same argument by Stryker couched as a judicial estoppel probably means that Stryker's promissory estoppel claim is exceedingly weak. This, however, is not a reason to deny Stryker leave to supplement its complaint or to decide prematurely the merits of its promissory estoppel claim.

## Conclusion

It makes no sense to prolong this case against XLIA, after it has satisfied the judgment against it, for purposes of allowing new, post-judgment claims to be asserted against it. The supplemental claims against TIG, by contrast, merely flesh out the issues relevant to a decision

on the only remaining claim in this case -- TIG's liability on its excess liability claim.  TIG has not raised any substantial reason to deny Stryker leave to supplement its complaint.  Therefore, Stryker's motion will be granted as to TIG and denied as to XLIA.


Dated:   October 7, 2013                             /s/  Joseph G. Scoville
                                                     United States Magistrate Judge