UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

| STRYKER CORPORATION, et al., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | Case No. 1:05-cv-51 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| TIG INSURANCE COMPANY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

In this diversity action, Stryker Corporation seeks to recover on an excess liability insurance policy issued by defendant, TIG. In this and related litigation, the court has found that the underlying insurance coverage provided by the primary carrier, XLIA, has been exhausted, leaving a claim against TIG for over $7.6 million, which Stryker contends falls within the excess liability coverage provided by TIG.

Presently pending before the court is TIG's motion for protective order under Fed. R. Civ. P. 26(c), in which TIG seeks to limit the scope of discovery. The basis for TIG's motion is Judge Bell's opinion and order, entered June 27, 2013, in which the court denied a motion for summary judgment by Stryker. TIG contends that the court's opinion and order made significant factual findings and legal determinations that are "now binding law of the case." (Mem. at 1, docket # 381). In essence, TIG contends that the court has already determined that the "net ultimate loss" language of the TIG policy unambiguously covers only underlying settlements entered into with TIG's written consent, that claims for which Stryker seeks compensation were settled without TIG's

consent, and that the only issue is whether TIG, through its previous actions or statements, has waived its right to enforce the consent requirement of the policy. TIG therefore contends that the waiver issue is the sole question left to be decided in this case. Stryker opposes the motion, contending that it is entitled to pursue discovery concerning the drafting history of the policy, TIG's interpretation of the same policy provisions with regard to other insureds, and other factual issues relevant to the meaning of the "net ultimate loss" provision relied on by TIG as a defense in this action.

At the heart of TIG's argument is the assertion that the law of the case doctrine prohibits Stryker's relitigation of any issue decided by Judge Bell in his summary judgment opinion. The law of the case doctrine is much misunderstood by both lawyers and courts, and TIG is no exception. Cases applying the law of the case doctrine arise in two distinct circumstances. The first arises when a case has been remanded by an appellate court. In such circumstances, the trial court is bound to proceed in accordance with the mandate and the law of the case as established by the appellate decision. *See, e.g., Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012); *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). Once an appellate court decides upon a rule of law, "that decision should continue to govern the same issues in subsequent stages of the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quotation and citation omitted). The only case cited by TIG, *McMurtry v. Paul Revere Life Ins. Co.*, 67 F. App'x 290, 295 (6th Cir. 2003), is of this variety, as it involved the preclusive effect of appellate findings after remand. This branch of the law of the case doctrine, sometimes called the "mandate rule," has no application to the present case, as TIG is not relying on any finding of the Sixth Circuit Court of Appeals.

The other species of the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). In contrast to the mandate rule, which is a rule of preclusion, this aspect of the law of the case doctrine does not limit the court's power, but merely directs its discretion. *Pepper*, 131 S. Ct. at 1250. As applied to proceedings in the district court, the law of the case doctrine is significantly mitigated by the provisions of Rule 54(b) of the Federal Rules of Civil Procedure. Rule 54(b) empowers the court to direct the entry of a final judgment that adjudicates fewer than all of the claims in the case. In the absence of an express direction for the entry of judgment, however, "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). By virtue of Rule 54(b), partial summary judgments are interlocutory and are not subject to the strict standards applicable to motions for reconsideration of a final judgment. *See American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Because of Rule 54(b), "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). Thus, in contrast to the mandate rule, pursuant to which the district court is virtually bound to follow a previous appellate holding, this aspect of the law of the case doctrine is purely discretionary, allowing the district court to revisit previous decisions on the basis of new evidence, new law, or a determination that the previous decision was not sustainable. *See American Canoe*, 326 F.3d at 515. The court should exercise its

discretion guided by concerns of finality and judicial economy on the one hand, balanced against the court's ultimate responsibility to reach a correct judgment, on the other. *Id.* Indeed, because of the force of Rule 54(b), some appellate courts hold that the law of the case doctrine applies only when there has been a final judgment and that a court's interlocutory rulings are freely reviewable at later stages of the case. *See, e.g., Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991); *accord Gander Mountain Co. v. Cabella's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008).

Under any appropriate view of the law of the case doctrine, therefore, the decisions embodied in the summary judgment opinion of June 27, 2013, as an interlocutory order, will be subject to possible reconsideration by Judge Bell in subsequent proceedings. One basis for such reconsideration is the production of substantially different evidence. *See Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988). Despite the age of this case, Judge Bell's summary judgment was entered before the parties had engaged in any meaningful discovery concerning the TIG policy. The policy provisions that now appear to be unambiguous on their face may be found to be subject to latent ambiguities, in light of industry standards, the policy's drafting history or TIG's application of the same policy language in other cases. *See Shay v. Aldrich*, 790 N.W.2d 629, 667-68 (Mich. 2010). If Stryker is not allowed to pursue discovery on these issues, how could it possibly be in a position to present the court with substantially different evidence in the future?

The court's summary judgment opinion came in response to a motion by Stryker, the plaintiff. As the party with the burden of proof in this case, Stryker faced a substantial burden. Where a party moving for summary judgment has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderon v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). A summary judgment in favor

of the party with the burden of proof "is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). Therefore, when a court denies summary judgment to a plaintiff, the court is essentially saying that the plaintiff's case is not so powerful that no reasonable jury would be free to disbelieve it. *See Arnett v. Meyers*, 281 F.3d 552, 561 (6th Cir. 2002). In the present case, the core question identified in Judge Bell's opinion was whether TIG had any defenses at all to Stryker's claims under the excess policy. (Op., 3). The court determined that it could not find, as a matter of law, "that TIG does not have any defenses that are unique to its policy." (*Id.*, 10). The court was careful to express its conclusions in the negative. In such circumstances, the court is not precluding further exploration and litigation of the issues on which plaintiff bears the burden, but merely decides that the case must proceed to the next step. In this case, the next step is discovery.

It may well be that Judge Bell will be unpersuaded by any new evidence unearthed by Stryker in the discovery process. At this stage of the litigation, however, it would be an abuse of discretion to deny Stryker the opportunity to uncover the very evidence that may persuade the court to adopt a different reading of the policy. The parol evidence rule and other doctrines of contract construction are matters of substantive law, not discovery. *See Salzman v. Maldaver*, 24 N.W.2d 161, 165 (1946). At the appropriate time, the court can determine whether any evidence produced in discovery is admissible and sufficient to support an alternative reading of ostensibly clear language. But the issue at this point is not admissibility, but discoverability. The rules allow discovery into any nonprivileged matter relevant to any party's claim or defense. FED. R. CIV. P. 26(b)(1). Although the court has discretion to limit the scope of discovery where the burden or expense of the proposed discovery outweighs its likely benefit, *see* FED. R. CIV. P. 26(b)(2)(C), in

a case involving over $7.6 million, it is hard to conclude that the expense of the discovery sought by Stryker would outweigh its benefit. TIG has not shown good cause, as required by Fed. R. Civ. P. 26(c)(1), for the entry of a protective order precluding the discovery sought by Stryker.

Defendant's motion for protective order (docket # 380) will therefore be denied. The court notes that Stryker has filed a motion to compel discovery, which, at least in part, raises the same issue decided in this opinion. Apparently, TIG has resisted fact discovery concerning the excess policy on the basis that the only issue left in the case is waiver. The parties are directed to meet and confer with regard to Stryker's motion to compel, in light of the ruling made in this opinion. If this opinion does not provide sufficient guidance to the parties to allow them to resolve Stryker's motion to compel, TIG is directed to file its response to the motion no later than January 21, 2014.

Dated: January 15, 2014 /s/ Joseph G. Scoville
United States Magistrate Judge