UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.,

        Plaintiffs,

                                     Case No.  1:05-CV-51

v.

                                     HON. ROBERT HOLMES BELL

XL INSURANCE COMPANY, INC.,
f/k/a Winterthur International America
Insurance company, and TIG INSURANCE
COMPANY,

        Defendants.

_____/

## O P I N I O N

On October 30, 2014, this Court granted Stryker Corp. and Howmedica Osteonic Corporation's (collectively "Stryker") motion for summary judgment on the issue of liability, and determined that TIG Insurance Company ("TIG") was obligated to insure Stryker for losses associated with Stryker's settlement of claims arising out of defective Uni-Knees. (Oct. 30, 2014, Op. & Order, ECF Nos.  546, 547.)  The parties stipulated that remaining issues regarding the amount of the judgment could be decided on briefs without a hearing. (ECF No. 551.)  This matter is now before the Court on the parties' cross-motions for summary judgment on the issues of damages and prejudgment interest.  (ECF Nos. 555, 557.)

**I.**

The first issue for the Court's consideration is the principal amount of the judgment.

The parties agree on the amount Stryker paid for Uni-Knee claims ($7,620,731) and they agree on the portion of this amount that fell within Stryker's self-insured retention ($1,426,473). TIG contends that the difference between those two amounts ($6,194,258) represents the principal amount due.[1] Stryker, on the other hand, contends that the principal amount due is $7,088,713. The difference between TIG's and Stryker's total loss amounts is $894,455, the amount XL paid in excess of its policy limits to settle Stryker's obligations in the *Pfizer* litigation. Stryker contends that the principal amount due should be computed by taking Stryker's total covered loss ($6,194,258 for Stryker's Uni-Knee settlements and $15,894,455 paid by XL toward the *Pfizer* settlement) and subtracting from that amount XL's $15,000,000 policy limits.

"The aim of a contractual remedy is to put the harmed party in the position in which [it] would have been absent the breach." *Branham v. Thomas M. Cooley Law Sch*., 689 F.3d 558, 565 (6th Cir. 2012). "The remedy for breach of contract is to place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v. Huron Castings, Inc*., 544 N.W.2d 278, 280 (Mich. 1996). "The party asserting a breach of contract has the burden of proving its·damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc. v. Krol*, 667 N.W.2d 379, 383 (Mich. 2003).

The relevant contract is the insurance policy issued by TIG. Under the policy, TIG

---

[1]The parties' numbers differ by $1 dollar. The Court has selected the lower number.

2

agreed to coverage as follows:

> We will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of occurrences insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE.

(TIG Policy, ECF No. 557-1, Page ID #10426.)

Stryker contends that pursuant to the contract language, "the Court must deduct the underlying policy limits from the total covered loss." (Pl. Br. 7, ECF No. 556.) Stryker's argument does not properly construe the contract language. Exhaustion of policy limits, which is addressed in subsection (2) of the coverage language quoted above, determines when TIG's obligation arises, but it does not determine what amount TIG must pay. Subsection (1), determines what amount TIG must pay, and it requires the Court to deduct all "underlying insurance," not the underlying policy limits.

Stryker suffered one set of losses associated with the defective Uni-Knees that was to be covered first by XL, with the excess to be covered by TIG. Stryker does not contend that it was damaged by XL's payment in excess of its policy limits, nor could it. The final judgment in *Stryker I*,[2] included a finding that "XL is not entitled to recover from Stryker any payment in excess of its $15 Million policy limit in connection with its payment of the Pfizer settlement." (*Stryker I*, Jgmt., ECF No. 1215.) This judgment was affirmed on appeal.

---

[2]In this opinion the Court will use "*Stryker I*" to refer to *Stryker v. XL Ins. Am.*, No. 4:01-CV-157 (W.D. Mich.), and its associated appeals, and "*Stryker II*" to refer to *Stryker Corp. v. XL Ins. Am.& TIG Ins. Co.*, 1:05-CV-51 (W.D. Mich.), and its associated appeals.

*Stryker Corp. v. XL Ins. Am., Inc*., 576 F. App'x 496 (6th Cir. 2014).  Stryker contends that

if the amount of XL's overpayment is not added into the principal amount due, TIG would

obtain an undeserved windfall.  According to Stryker, the benefit of XL's overpayment

should go to Stryker, the non-breaching party, rather than to TIG, the breaching party.

Stryker's argument lacks merit.  Stryker agrees that the proper measure of damages

for breach of contract is the amount necessary to put the **non-breaching** party in the same

position that it would have been in if there had been no breach.  (Pl. Br. 8, ECF No. 556).

Stryker then stands the law on its head by arguing that an award of $7,088,713 "compensates

Stryker for the insurance benefit that TIG owes under its policy."  (Pl. Reply Br. 1, ECF No.

562.)  Stryker is in effect measuring damages according to what it would take to place the

**breaching** party in the position it would have been in but for the breach.  There is no

authority for measuring damages in this manner.

"[T]he goal in contract law is not to punish  the breaching party, but to make the

nonbreaching party whole."  *Corl*, 544 N.W.2d at 280.  The proper measure of damages is

not the amount TIG would have paid had it not breached the TIG Policy, but what amount

will place Stryker in the position it would have been in had TIG not breached the TIG Policy.

That amount is $6,194,258.

Accordingly, the Court will enter judgment for the principal amount of $6,194,258.

## II.

The second issue for the Court's consideration is the amount of prejudgment interest

that should be awarded to Stryker.  Two kinds of prejudgment interest are at issue:  statutory prejudgment interest pursuant to Mich. Comp. Laws § 600.6013(8), and penalty prejudgment interest pursuant to Mich. Comp. Laws  § 500.2006(4).  The two kinds of prejudgment interest serve different purposes and are triggered by different events.  "[P]rejudgment interest under Mich. Comp. Laws § 600.6013 is intended to compensate the insured for the loss of the use of funds to which it is entitled," while "the penalty interest provision in Mich. Comp. Laws § 500.2006(4) is intended to penalize the insurer for dilatory action." *Stryker I,* 2008 WL 5235886, at \*6 (W.D. Mich. Dec. 15, 2008).  The parties disagree on when § 600.6013(8) statutory interest begins to run and whether penalty prejudgment interest pursuant to Mich. Comp. Laws  § 500.2006(4) is triggered at all.

As a federal court sitting in diversity, this Court is required to apply the substantive law of Michigan, the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014).  "Prejudgment interest is a substantive element of damage which must be determined under state law."  *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 922 (6th Cir. 2000).  The Court must apply Michigan law in accordance with the controlling decisions of the Michigan Supreme Court.  *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).  "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do."  *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th

Cir.2003)). "[D]ecisions by 'the Michigan Court of Appeals are binding authority where the Michigan Supreme Court has never addressed the issue decided therein.'" *Berrington v. Wal-Mart Stores, Inc*., 696 F.3d 604, 608 (6th Cir. 2012) (quoting *Morrison v. B. Braun Med. Inc*., 663 F.3d 251, 257 n.1 (6th Cir. 2011)). When the Sixth Circuit "has rendered a decision interpreting state law, that interpretation is binding . . . unless an intervening decision of the state's highest court has resolved the issue." *Rutherford*, 575 F.3d at 619 (quoting *Wankier*, 353 F.3d at 866).

### B. Statutory Prejudgment Interest – § 600.6013(8)

Section 600.6013(8) provides that statutory interest runs "from the date of filing the complaint." TIG contends that notwithstanding the language of the statute, the Sixth Circuit explicitly prohibited Stryker from seeking prejudgment interest from TIG prior to June 5, 2012. *See Stryker Corp. v. TIG*, 681 F.3d 819, 826 (6th Cir. 2012). TIG contends that because Stryker did not seek modification or clarification of that ruling, it is the law of the case, and it precludes an award of any prejudgment interest, including statutory interest under § 600.6013(8), for any time before the Sixth Circuit's opinion.

The basis for this argument is the Sixth Circuit's statement that "Stryker may not attempt on remand to hold TIG liable for any pre-judgment interest that has been imposed thus far in this case." *Id.* Contrary to TIG's assertions, this language does not address prejudgment statutory interest pursuant to § 600.6013(8). Read in context, it is clear that the Sixth Circuit was only addressing prejudgment interest pursuant to the penalty interest

6

statute, Mich. Comp. Laws   § 500.2006(4).   The Sixth Circuit gave no opinion on prejudgment interest pursuant to § 600.6013(8).   The Court concludes that the Sixth Circuit opinion does not bar Stryker from seeking prejudgment interest for any period prior to June 5, 2012.

Stryker contends that statutory prejudgment interest pursuant to § 600.6013(8) begins to run on January 20, 2005, when Stryker filed its original complaint.   Stryker notes that section 600.6013 "is a remedial statute which is to be liberally construed to give effect to its intent and purposes."  *Gordon Sel-Way, Inc. v. Spence Bros.*, 475 N.W.2d 704, 716 (Mich. 1991); *see also Perceptron*, 221 F.3d at 923 ("The prejudgment interest statute is remedial in nature and is to be construed liberally in favor of the prevailing party.").   The statute "plainly states that interest on a money judgment is calculated from the date of filing the complaint," and this language is "clear and unambiguous."  *Ayar v. Foodland Distribs.*, 698 N.W.2d 875, 877 (Mich. 2005) (holding that prejudgment interest is calculated from the date the complaint was filed, even with respect to attorney fees ordered as mediation sanctions that were not incurred until after the complaint was filed); *Morales v. Auto-Owners Ins. Co.*, 672 N.W.2d 849, 852 (Mich. 2003) (holding that interest is calculated from the date the complaint is filed, with no exception for periods of prejudgment appellate delay); *Phinney v. Verbrugge*, 564 N.W.2d 532, 549 (Mich. Ct. App. 1997) (holding that where the plaintiff recovered under a theory that first appeared in her fourth amended complaint, she was still entitled to prejudgment interest from the date of her original complaint).

7

TIG, on the other hand, contends that it would not be proper to measure prejudgment interest from the date Stryker filed its original complaint because that complaint sought only declaratory relief, and TIG owed Stryker no money at the time that complaint was filed. TIG notes that the purpose of § 600.6013 is "to compensate the prevailing party for the delay in the use of the money," and "to offset the costs of bringing the action and to provide an incentive for prompt settlement." *Perceptron*, 221 F.3d at 923; *see also Gordon Sel-Way*, 475 N.W.2d at 716 (noting that the policies underlying § 6013 are "to encourage early settlement . . . and to compensate the prevailing party for litigation expenses and the delay in receiving money damages."). TIG contends that these purposes would not be furthered by awarding prejudgment interest from the filing of the declaratory judgment complaint before any money was due.

TIG directs the Court to *Foremost Life Insurance Co. v. Waters*, 337 N.W.2d 29 (Mich. Ct. App. 1983). In *Foremost*, the original complaint sought only declaratory relief and was filed before any money was due. The Michigan Court of Appeals held that prejudgment interest began to run from the date that the defendant came into possession of the funds to which the plaintiff asserted a claim, not from the date of the original complaint. *Id.* at 31. Similarly, in *Beach v. State Farm Mutual Automobile Insurance Co.,* 550 N.W.2d 580 (Mich. Ct. App. 1996), the Michigan Court of Appeals held that, with respect to claims existing before the filing of the complaint, prejudgment interest ran from the date of the complaint, but for claims arising after the complaint was filed, the plaintiff could recover

8

prejudgment interest "from each date that defendant refused to pay benefits, i.e., the date of delay, until the date that judgment was entered." *Id.* at 586.  The Court reasoned:

> For claims that arise after the complaint is filed, however, it is erroneous to award prejudgment interest from the date of the complaint because such an award exceeds the purpose of compensating for a delayed payment, overcompensates for the related litigation, and departs from the purpose of providing an incentive for prompt settlement by both imposing a penalty upon the defendant and conferring a favor upon the plaintiff.  Rather, prejudgment interest regarding subsequent claims would be properly awarded from the date of delay, i.e., the postcomplaint date on which the insurer refused to pay and the delay in receiving money began.

*Id.* (citations and internal quotations omitted); *see also Elser ex rel. Elser v. Auto Owners Ins. Co.*, No. 294068, 2013 WL 1008929, at *13 (Mich. Ct. App. Mar. 14, 2013) (affirming district court's refusal to award prejudgment interest as of the date of the complaint with respect to claims arising after the filing of the complaint); *Dow Corning Corp. v. Cont'l Cas. Inc.*, Nos. 200143-54, 1999 WL 33435067 at *16 (Mich. Ct. App. Oct. 12, 1999) (holding that when "an insurer fails to pay claims arising after the complaint, prejudgment interest is payable from the postcomplaint date on which the insurer refused to pay").  Stryker urges this Court not to follow the *Foremost/Beach* line of cases.  Stryker contends that they are inconsistent with the Michigan Supreme Court's rulings in *Ayar* and *Morales*, and that the Sixth Circuit "has repeatedly predicted that the Michigan Supreme court would apply § 600.6013 as written and would award statutory interest from the filing of the complaint, and not when payments are due."  (Stryker Reply Br. 5, ECR No. 562.)

The Court disagrees with Stryker's argument.  None of the Michigan Supreme Court

cases involving the statutory prejudgment interest statute have considered situations where the insurance liability did not exist when the complaint was filed.  Moreover, despite the statute's apparent bright-line rule regarding the starting date for prejudgment interest, the Michigan Supreme Court itself has varied from a strict application of the statutory language where necessary to serve the statutory purpose.  In *Rittenhouse v. Erhart*, 380 N.W.2d 440, 462-63 (Mich. 1985), the Michigan Supreme Court held that when a party is added to a lawsuit that is already in progress, interest on the money judgment against that party accrues not from the date of filing the original complaint, but from "the date of the filing of the complaint upon the defendant against whom the judgment has been entered."  *Id.* at 462-63 (Riley, J., for the majority on the issue of prejudgment interest).  The Court explained its position as follows:

> That the Legislature intended plaintiffs to be compensated for periods during which no disputed claim even existed against the judgment debtor strains credulity.  Likewise, the laudable purpose of encouraging settlements is not applicable to periods during which no claim existed against the defendant.  A statute must be construed in the light of the purpose sought to be accomplished thereby.

*Id.* at 463 (Riley, J.)

Moreover, despite Stryker's assertions to the contrary, the Sixth Circuit has never suggested that the Michigan Supreme Court would not follow *Foremost* or *Beach* in an appropriate case.  In *Perceptron*, the Sixth Circuit recognized the two lines of authority from the Michigan Court of Appeals with "seemingly divergent" applications of the prejudgment interest statute, but was "convinced Michigan law requires that prejudgment interest be

calculated **in this case** on the entire judgment from the date that the complaint was filed," even when certain monetary claims included in the judgment had not accrued at the time of filing.   221 F.3d at 923 (emphasis added).   The *Perceptron* Court did not reject the *Foremost*/*Beach* line of cases.  Instead, the Court distinguished those cases by noting that in *Perceptron*, "the breach of contract claim was alleged in the complaint and clearly arose before the complaint was filed," even though the defendant's "continued breach allegedly resulted in damages that did not accrue until after the complaint was filed."  *Id*. at 923-24. In a subsequent case, the Sixth Circuit explained  its position vis-a-vis the *Foremost* and *Beach* line of cases:

> As we explained in *Perceptron*, the Michigan cases that have reached a result seemingly contrary to the plain wording of the statute refused to award prejudgment interest from the date of the complaint only "[f]or claims that arise after the complaint is filed."  In *Perceptron*, as in this case, the actual legal wrong (here, the anticipatory repudiation) predated the filing of the federal court action; it was only the quantification of damages that awaited later events. Consequently, we are bound by our earlier decision in *Perceptron*.

*Seton Co. v. Lear Corp*., 198 F. App'x 496, 500-01 (6th Cir. 2006) (citations omitted). Similarly, in *Whitesell Corp. v. Whirlpool Corp*., No. 1:05-CV-679, 2010 WL 1416855 (W.D. Mich. Apr. 1, 2010), this Court calculated prejudgment interest from the date the complaint was filed because, as in *Perceptron*, "Plaintiff's claim for breach of the [contract] was alleged in the complaint and clearly arose before the complaint was filed, even though Defendant's continued breach resulted in damages that did not accrue until after the complaint was filed."  *Id*. at *1.  *See also Roskam Baking Co. v. N. Ins. Co. of N.Y.*, 108 F.

Supp. 2d 789, 791 (W.D. Mich. 2000) (Enslen, C.J.) ("Section 600.6013(5) stands as a bright-line rule which requires payments of interest from the date the complaint is filed on all **claims that existed when the complaint was filed**.") (emphasis added).

In this case, in contrast to *Seton* and *Perceptron*, the legal wrong (the failure to pay insurance) did not predate Stryker's filing of its original complaint. Stryker had no monetary claim against TIG when it filed the declaratory judgment action. Stryker's claim for damages against TIG did not arise until after the complaint was filed. TIG was not obligated to pay insurance until after the XL policy had been exhausted, and the XL policy had not yet been exhausted when Stryker filed its complaint for declaratory judgment in 2005. The Court concludes, under the facts of this case, that the Michigan Supreme Court would not calculate prejudgment interest from the date Stryker's original complaint against TIG was filed because Stryker did not have a claim against TIG for damages at that time. The Michigan Supreme Court would calculate statutory prejudgment interest from the date Stryker's damages claim against TIG arose. The parties do not agree on what date that would be.

TIG contends that statutory prejudgment interest should not begin to run until August 7, 2014, the date of the Sixth Circuit's second opinion in *Stryker I*. In support of this argument TIG contends the rationale supporting the Sixth Circuit's directive compels this finding because TIG's conduct cannot be considered "dilatory" before August 7, 2014. *See Stryker I*, 681 F.3d at 826. This argument fails because the Sixth Circuit's "dilatory" language concerned application of the penalty interest statute rather than the statutory

12

prejudgment interest statute.

In the alternative, TIG contends that prejudgment interest should not begin to run until August 7, 2014, because that is when the amount covered by the TIG policy was both due and ascertainable. (TIG Reply Br. 6, ECF No. 563.) TIG contends that August 7, 2014, was the earliest date that the amount of TIG's payment obligation could be determined because that is when the Sixth Circuit finally determined that XL could benefit from the SIR. (*Id.* at 7.) TIG's argument is not convincing. First, there is nothing in the statute or Michigan case law that conditions the accrual of prejudgment statutory interest on an amount being both due and ascertainable. *Beach*, cited by TIG, held that "prejudgment interest regarding subsequent claims would be properly awarded from the 'date of delay,' i.e., the postcomplaint date on which the insurer refused to pay and the delay in receiving money began." *Beach*, 550 N.W.2d at 586. *Beach* does not require that the amount be ascertainable, only that it was due and unpaid. Second, TIG's suggestion that the obligation to pay statutory prejudgment interest does not begin to run until the obligation is confirmed by a court of appeals is not supported by the case law. An insurer's breach occurs when it fails to pay benefits when due, "not when the court later confirmed that failure." *City of Sterling Hts. v. United Nat. Ins. Co.*, 319 F. App'x 357, 364 (6th Cir. 2009).

Another reason TIG opposes running prejudgment interest from any date prior to August 7, 2014, is because Stryker continued to assert that the XL policy was not exhausted until August 7, 2014, when the Sixth Circuit affirmed this Court's final judgment in *Stryker*

13

*I.* (TIG Br. 10, ECF No. 557.)  TIG contends that because it had no duty to pay until the XL policy was exhausted, Stryker cannot contend that the XL policy was not exhausted and simultaneously assert that TIG had a present obligation to pay.   According to TIG, Stryker's position that the XL policy was not exhausted precludes Stryker from seeking prejudgment interest for any period before August 7, 2014.

TIG's argument is not persuasive.  There is nothing in the statute or case law to suggest that statutory prejudgment interest does not begin to run while the prevailing plaintiff pursues inconsistent positions in the litigation, or appeals a trial court ruling.

TIG has implied that, in any event, statutory interest should not begin to run before October 15, 2013, when Stryker filed its supplemental complaint adding a claim for money damages.  (Supp. Compl., ECF No. 363.)  The Court is not persuaded that postponing the start of statutory interest until a declaratory judgment action is converted by an amended complaint into an action for damages is required by state or federal law.  In *Foremost*, the Court of Appeals held that statutory prejudgment interest should begin to run from the date that the plaintiff's claim arose, notwithstanding the fact that the plaintiff's complaint only sought declaratory relief and the plaintiff had not filed an amended complaint for damages. 337 N.W.2d at 30-32.  The Federal Declaratory Judgment Act similarly enables a court to grant further relief, including monetary damages, whether or not they have been requested

in the declaratory judgment proceeding.[3]  *See Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*, 155 F.3d 17, 25 (2d Cir.1998); *Sec. Ins. Co. of New Haven v. White*, 236 F.2d 215, 220 (10th Cir.1956); *Travelers Prop. Cas. Co. v. R.L. Polk & Co.*, No. 06-12895, 2008 WL 3843512, at *4 (E.D. Mich. Aug. 13, 2008).

The Court concludes that Stryker is entitled to statutory prejudgment interest from the time its claim for damages arose, even if it did not file its amended complaint for damages until a later date.  Pursuant to the TIG policy, Stryker's claim for damages against TIG arose when the XL policy was exhausted.  On February 2, 2009, XL paid Pfizer $26 million to settle all of Stryker's liability to Pfizer. (Settlement Agrmt, ECF No. 556-2; Bloss Supp. Decl. ¶ 2, ECF No. 180.)  *See also Stryker I*, 735 F.3d at 353.  This payment exhausted the XL policy.  (Feb. 8, 2013, Op. 10, ECF No. 304.)  As of February 2, 2009, Stryker's damages exceeded the XL policy limits and TIG's obligation to pay arose.   Moreover, TIG was on notice of Stryker's claim for damages.  Stryker's original complaint alleged that Pfizer's claim for indemnification, together with Stryker's other payments,  would exhaust the limits of the XL policy and that TIG had an obligation to cover any loss in excess of the XL policy. (Compl. ¶ 33, ECF No. 1.)  In its Third Amended complaint filed in 2007, Stryker sought a declaration that Pfizer's claim for indemnification, when added to other defense and indemnity payments made by Stryker will exhaust the limits of the XL policies, and that TIG

---

[3]The Declaratory Judgment Act provides that the Court may enter "further necessary or proper relief . . . against any adverse party whose rights have been determined by such judgment."  28 U.S.C. § 2202.

has an obligation to cover any loss in excess of the primary umbrella policies.  (Third Am. Compl. ¶ 72, ECF No. 70.)  Accordingly, the Court concludes that Stryker's damages claim against TIG arose on February 2, 2009.  Requiring TIG to pay prejudgment interest from this date, the date its liability arose, and at a time when it was on notice of Stryker's claim, is consistent with the central purposes of § 600.6013(8) to compensate the insured for delay caused by the insurer in receiving sums owed under the policy and to encourage prompt settlement of meritorious claims between an insurer and its insured.

## C.  Penalty Interest– § 500.2006(4)

Michigan's Uniform Unfair Trade Practices Act, Mich. Comp. Laws  § 500.2006(4), allows a claimant under an insurance policy to recover twelve percent interest for the delay in payment of an insurance claim.[4]  "[T]he purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay.'"  *Stryker II*, 681 F.3d at 826 (quoting *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W.2d 74, 76 (Mich. Ct. App. 1998), *rev'd on other grounds by Griswold*

---

[4]The Act provides in pertinent part:

(4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. . . . Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award.

Mich. Comp. Laws  § 500.2006(4).

*Props., LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 555 (Mich. Ct. App. 2007)).   As the

Sixth Circuit noted in *Stryker I*, "first party insurance claimants need not demonstrate that

the claim was 'not reasonably in dispute' in order to recover the 12% interest."   735 F.3d at

360.

Under § 500.2006(4), penalty interest commences 60 days after the insured provides

"satisfactory proof of loss" to the insurer.   Stryker contends that it is entitled to penalty

interest from September 4, 2012 (60 days after the Sixth Circuit's remand of its June 5, 2012,

opinion), or, at the latest, from December 23, 2012, (60 days after Stryker's October 24,

2012, response to TIG's request for further information regarding proof of loss).   TIG

contends that Stryker is not entitled to any penalty interest because TIG's actions were not

dilatory and because Stryker did not submit a satisfactory proof of loss.

In its June 5, 2012, opinion, the Sixth Circuit stated:

> Stryker has not alleged that TIG has engaged in "dilatory practices" with
> regard to paying claims.   Indeed, Stryker currently argues that TIG has no
> obligation to Stryker at all.   Therefore, Stryker has a right to pre-judgment
> interest from XL, and only XL.   Thus, Stryker may not attempt on remand to
> hold TIG liable for any pre-judgment interest that has been imposed thus far
> in this case.

*Stryker II*, 681 F.3d at 826.

TIG notes that Stryker continued to argue in 2013 and 2014 that XL had not exhausted

its policy because it was liable for the self-insured retention.   TIG contends that  because

Stryker continued to assert that the XL policy was not exhausted, under the rationale of the

Sixth Circuit's June 5, 2012, opinion, Stryker cannot claim that TIG was dilatory at any time

17

prior to the Sixth Circuit's August 7, 2014, opinion.

The Court disagrees. The Sixth Circuit made it clear in its June 5, 2012, opinion that XL's *Pfizer* settlement would erode XL's policy limits. *Stryker I*, 735 F.3d at 359 ("[O]n remand, the district court should consider Pfizer's costs stemming from the indemnification action against Stryker as part of the sum that may be used to exhaust the $15 million aggregate limit of liability of the XL policy.") As a result of this determination, TIG became obligated to Stryker for Stryker's Uni-Knee settlements. Although Stryker and TIG continued to assert that XL was liable for the $2 million self-insured retention, (*see* Feb. 8, 2013, Op. 4, ECF No. 304), this dispute did alter the fact that TIG was liable to Stryker for an amount in excess of $6 million.

As a precondition to the award of penalty interest, the claimant must provide "satisfactory proof of loss." Mich. Comp. Laws § 500.2006(4). The statute does not define what constitutes "satisfactory proof of loss." However, the obligation to supply a satisfactory proof of loss must be read in light of Mich. Comp. Laws § 500.2006(3) which provides in relevant part that "[a]n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." If the insurer fails to specify in writing the materials that constitute satisfactory proof of loss, the insured is excused from providing further proof of loss. *Angott v. Chubb Grp. Ins.*, 717 N.W.2d 341, 354 (Mich. Ct. App. 2006); *Medley v. Canady*, 337 N.W.2d 909, 911-12 (Mich. Ct. App. 1983). The Michigan Court of Appeals

18

has explained that "satisfactory proof of loss does not equate to agreement as to the amount of damages." *Griswold Properties, LLC v. Lexington Ins. Co.*, 740 N.W.2d 659, 673, *opinion reinstated in part, superseded in part,* 741 N.W.2d 549 (Mich. Ct. App. 2007).  If an insured  provides the materials specified by the insurer, the proof of loss is  satisfactory. *Id.*  "The insurer may disagree with the amount of loss claimed, at which point the damages are in dispute, but the insurer may not argue that the insured has failed to supply satisfactory proof of loss. Whether the damages are reasonably in dispute is another inquiry entirely." *Id.*

Stryker contends that its notices to TIG of each underlying claim and lawsuit between 2000 and 2006 were sufficient to constitute a satisfactory proof of loss, and that because TIG did not specify in writing within 30 days of receiving those notices what materials would constitute a satisfactory proof of loss, Stryker was excused from submitting any further proof of loss.  The Court disagrees.  "A claim is more than just a notice of accident and injury; it contemplates a demand for relief as well." *Medley*, 337 N.W.2d at 911.  The notices Stryker provided TIG between 2000 and 2006 were notices of claims against Stryker.  These notices of claims against Stryker that arose before the XL policy was exhausted do not constitute demands for relief from TIG.

Stryker did make a demand for payment from TIG in a letter dated September 14, 2012:

> In light of the Sixth Circuit's rulings in *Stryker I & II*, Stryker has suffered a loss in excess of the XL insurance policy.  TIG is liable for this loss under its

19

2000 excess policy.  At a minimum, TIG is liable for $6,515,186.  This is the amount that Stryker paid in settlements ($7,620,731) less the amount that XL paid for Pfizer's defense expenses ($1,105,545) which the Sixth Circuit ruled do not erode XL's policy limits.  If the XL policy is exhausted, then TIG is liable for the full amount of Stryker's settlements, or $7,620,731.

This letter reiterates Stryker's claim under TIG's policy.  We are enclosing the Sixth Circuit's opinions, which constitute Stryker's proof of loss.

(Pl. Br., Ex. H, ECF No. 556-8.)

TIG's counsel responded on October 5, 2012, that the Sixth Circuit opinions did not constitute adequate proof of loss because they provided no information regarding the settlements as to which Stryker now intended to seek recovery from TIG.  (*Id.* at Ex. I, ECF No. 556-9.)  TIG requested the following documents and information with respect to each direct DUK claim Stryker settled:

- Name, address and other identifying information regarding claimant;
- Date of implant, date of diagnosis, date of explant;
- Complaint and/or claim;
- Case evaluations;
- Amount of settlement, date of settlement, and date of settlement payment;
- Settlement check/draft;
- Dismissal order, release, settlement agreement, and/or stipulation of settlement; and
- Communications with any insurer regarding claim evaluation and settlement.

(*Id.*)

In response, on October 24, 2012, Stryker's counsel sent TIG a chart showing the name of each claimant, the date of implant, and the date of explant, if known.  (Pl. Br. Ex. J, ECF No. 556-10.)  Stryker also sent a chart showing the amount of each settlement, and the date of settlement, and copies of the complaints and settlement agreements.  Stryker

advised that additional information in the underlying litigation files was available to TIG for review.  (*Id.*)  There is no evidence that TIG specified in writing that these materials did not constitute a satisfactory proof of loss.  Accordingly, the Court concludes that Stryker provided satisfactory proof of loss as of October 24, 2012, and that penalty interest begins to run on December 23, 2012, 60 days after the proof of loss was submitted.

For the reasons stated herein, Stryker and TIG's cross-motions for summary judgment on the issue of damages will be granted in part and denied in part.

An order consistent with this opinion will be entered.


Dated: <u>April 29, 2015</u>                              <u>/s/ Robert Holmes Bell</u>
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE